UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
FLORENCE E. HUTH,

                    Plaintiff,

      - against -

DEBORAH HASLUN, individually, CARLOS
MILLAN, individually, JOSEPH BLOOMER,
individually, RAMESH MEHTA, individually,
JONATHAN BARR, individually,

                    Defendants.
------------------------------------------------------x

07 Cv. 152 (CLB)

*Memorandum and Order*

Brieant, J.

      Before this Court are two motions: (1) a motion for summary judgment filed by Defendants Deborah Haslun, Carlos Millan, Joseph Bloomer, Ramesh Mehta, Jonathan Barr, Stephen Grabowski, Donald Bell, Frances Rosales, Michael Flynn, Traci Horwedel, and Richard Newhouse on January 11, 2008 (Docs. 17, 18); and (2) Plaintiff Florence E. Huth's cross-motion (put forth in her opposition papers to Defendants' motion for summary judgment) for leave to serve a second amended complaint to include an additional defendant, Thomas Fitzgerald, and to remove dismissed defendants from the action and the caption (Doc. 30). On February 28, 2008, the parties filed a stipulation of partial dismissal, with prejudice, of Defendants Grabowski, Bell, Rosales, Flynn, Horwedel, and Newhouse, which this Court so ordered on March 25, 2008. Thus, only Defendants Haslun, Millan, Bloomer, Mehta, and Barr remain in the action. Plaintiff filed her memorandum of law in opposition to the motion for summary judgment and in support of a cross-motion for leave to amend the complaint on February 29, 2008. Defendants filed their reply on March 7, 2008. Oral arguments were held on March 28, 2008 and this Court reserved decision.

1

**Facts**

Plaintiff commenced this action on January 9, 2007, alleging violations of her First and Fourteenth Amendment rights, and filed an amended complaint on April 13, 2007. Plaintiff brings this action under 42 U.S.C. § 1983 alleging that Defendants violated her First and Fourteenth Amendment rights, and her coworker's First Amendment rights.

At all times relevant, Plaintiff was an Assistant Toll Division Manager employed by the New York State Thruway Authority. Defendants were also employed by the Thruway Authority at all times relevant, Haslun as a Director of Labor Relations, Millan as an Assistant Director of Labor Relations, Bloomer as a Toll Division Manager, Mehta as the Division Director of the New York Division, and Barr as the Director of Administrative Services. (Pl.'s 56.1 Stmt. ¶¶ 2-6.)

On April 26, 2005, Plaintiff encountered Dorothy Archer, an employee of the Thruway Authority who is not a party to this action, at the Thruway Authority's Tarrytown facility. Plaintiff and Ms. Archer were friends acquainted through work. Ms. Archer was one of Plaintiff's subordinates. (Pl.'s Br. 12.) On that day, Plaintiff was on duty, but Ms. Archer was not. Plaintiff testified that Ms. Archer "was very upset and needed someone to talk to." (Defs.' Ex. I, at 183: 18-22.) Ms. Archer complained to Plaintiff about the workplace activities of certain of her coworkers and supervisors; Plaintiff alleges that these were criminal activities. (Pl.'s 56.1 Stmt. ¶ 30.) Plaintiff alleges that she later that day reported Ms. Archer's complaints

2

about her co-workers' possibly criminal activities to Defendant Bloomer and that he responded that he was already aware of Ms. Archer's concerns. (Pl.'s 56.1 Stmt. ¶ 64.)

After Plaintiff encountered Ms. Archer at the Tarrytown facility on April 26, 2005, Plaintiff drove Ms. Archer in a Thruway Authority vehicle to a Thruway Authority facility in Newburgh, New York. Plaintiff stopped the vehicle at toll plazas along the way, where Ms. Archer solicited and obtained Thruway Authority employees' signatures on petitions to nominate Ms. Archer for union office. Plaintiff alleges that Ms. Archer did not tell her that she was stopping to solicit and obtain nominating petitions. (Pl.'s 56.1 Stmt. ¶ 24.) Plaintiff testified at her disciplinary hearing that Ms. Archer told her "that she was not feeling well, [and] she needed to get out and walk around." (Farber Decl., Ex. I, at 164:22-23.) Plaintiff made a written statement on May 2, 2005 and testified at her September 18, 2007 deposition that Ms. Archer told her when they met at the Tarrytown facility that she was going to stop at Woodbury and Newburgh. (Pl.'s 56.1 Stmt. ¶ 39; Farber Decl., Ex. B, at 1.)

Plaintiff alleges that on April 29, 2005, Defendant Bloomer advised Plaintiff and Ms. Archer that they were under investigation in connection with the April 26, 2005 events. (Pl.'s 56.1 Stmt. ¶ 65.) Defendant Millan questioned Plaintiff about the events and advised her that she might be charged with disciplinary violations. (Pl.'s 56.1 Stmt. ¶ 65.) According to Defendants, Thruway Authority policy prohibited management personnel such as Plaintiff to be involved with union elections and prohibited the use of Thruway Authority vehicles or equipment in connection with union elections. (Defs.' 56.1 Stmt. ¶ 37-38.) Defendant Haslun

3

sent a letter to Plaintiff on June 27, 2005 notifying her that she was "charged with misconduct and/or incompetence in that [she] violated administrative services bulletin 2004-16 Union Elections" by driving Ms. Archer in a Thruway Authority vehicle "from the Authority's Tarrytown facility to Woodbury Toll, Newburgh Toll, the Newburgh Maintenance building and back again to the Tarrytown facility enabling [Ms.] Archer to solicit signatures for a Union campaign." (Farber Decl., Ex. E.) Plaintiff alleges that Defendant Haslun prepared this letter in consultation with Defendant Millan and with the approval of Defendant Mehta. (Pl.'s 56.1 Stmt. ¶ 68.)

A hearing was held before hearing officer Joel Douglas on August 17, 2006 and November 16, 2006. (Pl.'s 56.1 Stmt. ¶ 69.) Defendant Millan prosecuted the charges on behalf of the Thruway Authority against Plaintiff. (Pl.'s 56.1 Stmt. ¶ 69.) It was stipulated that, on April 26, 2005, Ms. Archer had stopped at Thruway Authority facilities and "asked [employees] to sign her Union petition and that all did and that all were aware of [Thruway Authority policy regarding union elections] and in fact that none were disciplined for signing the Archer petition." (Farber Decl., Ex. H, at 2.) It was also stipulated that "[n]o manager was ever disciplined for signing or permitting signatures [to] be obtained in violation of [Thruway Authority policy]." (Farber Decl., Ex. H, at 2.) On January 30, 2007, the hearing officer issued findings and recommendations concluding that Plaintiff was "innocent of the Charges and Specifications as set forth in the Statement of Charges [in the letter from Defendant Haslun] dated June 27, 2005." (Farber Decl., Ex. H, at 6.)

On April 11, 2007, Defendant Barr, the Thruway Authority's Director of Administrative Services, notified Plaintiff in writing that he had reviewed the record from the disciplinary hearing and rejected the hearing officer's findings and recommendations. (Farber Decl., Ex. D, at 1.) He found "a significant contradiction" between Plaintiff's May 2, 2005 written statement, in which she stated that Ms. Archer told her before they left for Newburgh that she needed to stop at the Woodbury and Newburgh toll stations, and her November 16, 2006 hearing testimony, where she stated that Ms. Archer was not feeling well and needed to get out and walk around. (Farber Decl., Ex. D, at 1-2.) Defendant Barr "found [Plaintiff] guilty of misconduct and/or incompetence for violating Administrative Services Bulletin 2004-16, Union Elections" and as a penalty demoted Plaintiff to her last permanently held lower level position. (Farber Decl., Ex. D, at 1.)

Defendant Haslun testified at her deposition that Defendant Barr, prior to issuing his decision letter to Plaintiff, discussed his final determination with her and that he asked her office to assist him in writing the final document. (Nicaj Aff., Ex. 15, at 30:23-31:15.) Haslun notified Defendant Millan of Barr's request. (Nicaj Aff., Ex. 15, at 31:16.) Millan, who prosecuted Plaintiff at her disciplinary hearing, testified at his deposition that he met with Barr to discuss Barr's decision to reject the hearing officer's recommendations and then drafted Barr's letter to Plaintiff. (Nicaj Aff., Ex. 16, at 13:11-17.) Defendant Haslun initially testified that she did not "have anything to do with the drafting" of Barr's final disciplinary determination. (Nicaj Aff., Ex. 15, at 32:16-24.) Confronted with her responses to Plaintiff's interrogatories, however, she

5

admitted that she had reviewed the document before Millan gave a final draft to Barr. (Nicaj Aff., Ex. 15, at 35:6-20.)

Plaintiff commenced this action on January 9, 2007, following completion of her disciplinary hearing, but before the hearing officer issued his findings and recommendations. Plaintiff alleges that she was subjected to retaliation as a result of her First Amendment activity, which consisted of reporting Ms. Archer's concerns about her co-workers' possibly criminal activities to Defendant Bloomer and commencing this action in January 2007. Plaintiff asserts additional first amendment claims on behalf of Ms. Archer.

In their motion for summary judgment, Defendants argue that (1) Plaintiff has failed to show that she engaged in protected speech or that there was a causal connection between any speech and her discipline, (2) Plaintiff lacks third-party standing to assert rights belonging to Ms. Archer, (3) Plaintiff cannot establish an equal protection violation, and (4) Defendants Barr, Haslun and Millan are entitled to qualified immunity.

**Discussion**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of

the non-movant is to be believed and all justifiable inferences are to be drawn in his favor."
*Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

*Plaintiff's First Amendment Retaliation Claims*

To establish a First Amendment retaliation claim, "Plaintiff must show: (1) her speech was constitutionally protected, as a result of which (2) she suffered an adverse employment decision, and (3) a causal connection existed between the speech and the adverse employment decision, so that it can be said that her speech was the motivating factor in the determination." *Gronowski v. Spencer*, 424 F.3d 285, 292 (2d Cir. 2005).

Whether the speech was constitutionally protected, that is, whether the speech addressed a matter of public concern, is a question of law for this Court to decide. *See id.* Plaintiff alleges that she engaged in protected activity when she filed her original complaint in this action and when she reported Ms. Archer's concerns about her co-workers' possibly criminal activities to Defendant Bloomer. (Pl.'s Br. 9.) Both are matters of public concern and are constitutionally protected. *Cf. Ruotolo v. City of New York*, 514 F.3d 584, 590 (2d Cir. 2000) (affirming summary judgment on a First Amendment retaliation claim where Plaintiff's allegedly constitutionally protected speech was the preparation of a report on safety conditions as a Training and Safety Officer of the New York Police Department, was assigned to prepare). Plaintiff suffered an adverse employment decision when she was charged with violations of Thruway Authority policy and subsequently demoted.

Furthermore, Plaintiff has raised an inference of a causal connection between these events by the timing of her report of Ms. Archer's co-workers' possibly illegal activities and the disciplinary investigation three days later, and by the timing of her filing the original complaint in this action in January 2007 and the Thruway Authority's April 2007 rejection of the hearing officer's recommendation that Plaintiff was innocent of the disciplinary charges. Summary judgment on this ground is thus denied.

*Plaintiff's Third-Party Standing to Assert Ms. Archer's First Amendment Rights*

"A plaintiff may assert the constitutional claims of a third party if the plaintiff can demonstrate: (1) injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights, and (3) 'some hindrance to the third party's ability to protect his or her own interests.'" *Camacho v. Brandon*, 317 F.3d 153, 159 (2d Cir. 2003) (quoting *Campbell v. Louisiana*, 523 U.S. 392, 297 (1998)). There is no question that Plaintiff has suffered injury, her demotion. Ms. Archer was a friend and subordinate of Plaintiff (Defs.' 56.1 Stmt. ¶¶ 26-27), which would cause Plaintiff to be an effective advocate for Ms. Archer's rights. Finally, Ms. Archer, as with the third party in *Camacho*, suffered no injury because she was not disciplined in connection with the April 26, 2005 activities, so she would not have standing to sue on her own. Thus, Plaintiff has standing to assert a violation of Ms. Archer's first amendment rights. *See id.* (holding plaintiff had standing to assert third-party claims where the third party was "inhibited from seeking redress for these injuries because of the absence of any direct economic harm to him").

*Plaintiff's Equal Protection Claim*

Plaintiff alleges that "Defendants' conduct constituted a selective prosecution of Plaintiff violative of her right to Equal Protection." (Am. Compl. ¶ 36.) "To prevail on a selective treatment claim, a plaintiff must show that (1) he was treated differently from other similarly-situated individuals; and (2) the differential treatment was based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Skehan v. Village of Mamaroneck,* 465 F.3d 96, 110 (2d Cir. 2006) (internal quotations omitted). The Second Circuit is clear that "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Id.* (internal quotations omitted).

Defendant argues that Plaintiff has not identified any similarly situated Thruway Authority employees who violated the Thruway Authority's rules concerning manager involvement in union elections but who were not disciplined for it. Plaintiff was an Assistant Toll Division Manager, second in command of the Toll Operations in the NY Division, who was disciplined for engaging in and supporting the union election efforts of Ms. Archer while on duty. (Nicaj. Aff, Ex. 6, at 3.) During Plaintiff's disciplinary hearing, several Toll Plaza Manager Ones testified that they signed Ms. Archer's union election petition while on duty on April 26, 2005, but were not disciplined for that action. (Nicaj. Aff, Ex. 6, at 3-4.) Whether these Toll Plaza Manager Ones were similarly situated to Plaintiff, an Assistant Toll Division Manager, is ordinarily a question of fact for the jury. *See Bey v. City of New York*, 210 Fed.

9

Appx. 50, 53 (2d Cir. 2006) (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). On the evidence currently in the record, this Court cannot say as a matter of law that Plaintiff is not similarly situated from the other Thruway Authority managers who were not disciplined in connection with union election activities.

*Qualified Immunity*

Defendants argue that Defendants Haslun, Director of Labor Relations, Barr, Director of Administrative Services, and Millan, Assistant Director of Labor Relations, are entitled to qualified immunity. "Even where a [constitutional] right is clearly established, an official is entitled to qualified immunity nevertheless if 'it was objectively reasonable for the public official to believe that his acts did not violate that right[].'" *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1998) (second alteration in original) (quoting *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991)). "'Upon a motion for summary judgment asserting a qualified immunity defense in an action in which an official's conduct is objectively reasonable but an unconstitutional subjective intent is alleged, the plaintiff must proffer particularized evidence of direct or circumstantial facts ... supporting the claim of an improper motive in order to avoid summary judgment.'" *Sheppard v. Beerman*, 94 F.3d 823, 828 (2d Cir. 1996) (quoting *Blue v. Koren*, 72 F.3d 1075, 1084 (2d Cir.1995)). Evidence of improper motive "includes expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." *Blue*, 72 F.3d at 1084.

It was objectively reasonable for Defendants to bring disciplinary charges against Plaintiff for violating Thruway Authority policy on union elections and to later demote her after concluding that she did know of Ms. Archer's planned union activities when she drove her to Newburgh. Thus, to defeat Defendants' motion for summary judgment, Plaintiff must proffer particularized evidence supporting a claim that Defendants acted with an improper motive. Plaintiff has done so by demonstrating "circumstances suggesting in a substantial fashion that [she] has been singled out." The parties stipulated at Plaintiff's hearing that none of the other managers who violated Thruway Authority policy against involvement with union elections while on duty were investigated or disciplined in any way. Plaintiff, on the other hand, was investigated and charged, and once the hearing officer determined Plaintiff was innocent, several Defendants together prepared a decision that rejected the hearing officer's findings and demoted Plaintiff. Defendants' motion for summary judgment on the basis of qualified immunity is thus denied.

*Plaintiff's Cross-Motion for Leave to File a Second Amended Complaint*

Plaintiff seeks leave to filed a second amended complaint "to include an additional defendant, Thomas Fitzgerald and to remove other named Defendants from the action and the caption." (Pl.'s Br. 19.) Mr. Fitzgerald was named as a defendant in Plaintiff's original complaint but removed as a party in the First Amended Complaint, allegedly "before Plaintiff learned of his direct involvement in the deprivations of her constitutional rights." (Pl.'s Br. 20.) Mr. Fitzgerald had already been deposed. A second amended complaint for these purposes and

under these circumstances is unlikely to prejudice Defendants or cause undue delay. Plaintiff's cross-motion is granted and Plaintiff is directed to file her second amended complaint by April 15, 2008.

**Conclusion**

For the forgoing reasons, Defendants' motion for summary judgment is denied. Plaintiff's cross-motion for leave to file a second amended complaint is granted. The Clerk of Court shall terminate motions 17, 18, and 30.

A final pretrial conference will be held on May 23, 2008 at 9:30 A.M.

SO ORDERED.

Dated: White Plains, New York
      April 3, 2008

                                              Charles L. Brieant, U.S.D.J.